# Exhibit E

Administrative Deflection Summary - Common Institutional Responses

Prepared by: Estelle Liu
Purpose: To document the recurring deflection patterns and avoidance language used by university officials across multiple levels, in response to my accommodation-based appeal and grievance.

## Summary of Legal Violations by The Ohio State University

The Ohio State University has committed multiple violations of federal disability law, including:

1. Failure to Implement Approved Accommodations
Despite a formally approved Flex Plan, the university failed to ensure the requested accommodations were carried out, in violation of the ADA's requirement for timely and effective implementation of reasonable accommodations.

2. Constructive Denial of Course Completion
The university refused to provide any academically equivalent or medically appropriate alternative for completing a required course, despite repeated requests, medical documentation, and feasible proposals by the Plaintiff. This constitutes a constructive denial of access to education under Section 504 of the Rehabilitation Act.

3. Retaliatory Suppression of Communication
Vice Provost Michelle Jones blocked the Plaintiff's university email account twice — once after a formal disability complaint, and again following civil rights filings. This retaliatory action obstructed the Plaintiff's ability to pursue accommodation, communicate with administrators, and preserve procedural access, violating 34 C.F.R. § 104.61 and § 100.7(e).

4. Deliberate Administrative Indifference and Role Deflection Senior administrators and SLDS repeatedly disclaimed responsibility for

implementing or coordinating accommodations, instead shifting the burden to individual faculty. This violates the ADA's prohibition against structural delegation of legal obligations and constitutes deliberate indifference to the Plaintiff's federally protected rights.

The University repeatedly claims that it is "willing to help," yet has offered no legally sufficient, medically appropriate, or academically actionable solutions. This is not assistance — it is optics.

It is akin to a person asking for food, and being handed a piece of candy with the message: "You should be grateful we gave you anything at all." That is not help. That is public relations. And it does not satisfy the legal standard of reasonable accommodation under the ADA or Section 504.

Such responses are not accommodations. They are public relations tactics designed to appear cooperative while withholding the very things required under federal disability law.

## Category A: Shifting Responsibility to SLDS

"SLDS has not authorized this request."

"We follow SLDS expectations, and they did not include this in your

plan."

"SLDS determines appropriate accommodations, not the college."

Explanation:

SLDS evaluates accommodation eligibility and approves Flex Plans, but does not dictate the academic format of course completion. Academic units are responsible for implementing accommodations in alignment with ADA guidelines. These responses mischaracterize SLDS's scope and use it as a shield to avoid academic responsibility.

发件人: Jones, Norman <jones.2376@osu.edu>
日期: 星期四, 2025年4月17日 02:53
收件人: Liu, Estelle <liu.10412@buckeyemail.osu.edu>
抄送: Martin, Andrew <martin.1026@osu.edu>, The Office of
Academic Affairs <academicaffairs@osu.edu>
主题: RE: Follow-up on Appeal for MATH 4548 – Request for
Confirmation

Dear Estelle Liu,

Dr. Martin is the appropriate administrative leader to work with
you on this matter. I have been assisting him as he has been
attempting to resolve your concern.

My understanding is that Dr. Martin worked with the Mathematics
Department to offer you an alternative test-taking arrangement.
Jenny Speas in SLDS confirmed that this alternative test-taking
arrangement (a distraction-reduced small group setting) meets your
accommodation needs. Yet you rejected that resolution.

It would help to know precisely what accommodation would meet
your goals of having "an alternative academic completion plan."
Are you seeking to take the test at SLDS? Or is there some other
outcome you seek?

Respectfully,

发件人: Martin, Andrew <martin.1026@osu.edu>
日期: 星期二, 2025年4月15日 20:31
收件人: Liu, Estelle <liu.10412@buckeyemail.osu.edu>, The Office
of Academic Affairs <academicaffairs@osu.edu>
抄送: Jones, Norman <jones.2376@osu.edu>
主题: RE: Formal Escalation – Academic Appeal for MATH 4548
(Final Graduation Requirement)

Hi Estelle

Thank you for providing the SLDS letter; I have forwarded it to Jim
Fowler. He will be reaching out to you to provide a distraction free
space for your exam. Please follow up with Jim when he writes to you.
Best
Andrew

THE OHIO STATE UNIVERSITY

Andrew W. Martin

## Category B: Deflecting to the Department or Instructor

"Any requests beyond what SLDS approves are up to the department."

"This is ultimately up to your instructor to decide."

"The department has already offered an exam space; that is sufficient."

Explanation:

This language shifts responsibility to departments or instructors, even after a formal appeal has been submitted to the college. It ignores the college's obligation to coordinate accessible completion formats when traditional methods are not feasible due to documented disability.

On April 14, 2025, I received a standardized notification email from

SLDS titled "Missed Finals Scheduling Deadline", stating that because I missed the deadline to schedule my final exam, I would need to either take the exam without accommodations or work out an alternative arrangement with my instructor. The email explicitly stated: "You are not required to provide alternatives; any flexibility offered would be at your discretion."

This email represents a serious institutional failure for two reasons:

## 1. SLDS Delegated Federally Protected Responsibilities to Instructor Discretion

By stating that instructors are not required to provide any alternatives—even for a student with a documented accommodation—SLDS effectively shifted responsibility for implementing federally mandated academic adjustments to individual instructors. This approach contradicts the requirements of the ADA and Section 504, which obligate institutions to proactively provide reasonable accommodations and to ensure equal access.

Flexibility for a documented disability is not "optional"; it is federally protected.

## 2. SLDS Failed to Acknowledge My Flex Plan or Psychological Barrier

The email made no mention of my Flex Plan, which had been submitted and approved prior to this message. It also failed to acknowledge the documented psychological limitations that make instructor negotiation unfeasible in my case. Instead, SLDS treated my situation as a standard scheduling error, sending a generalized template that placed the full burden of coordination and resolution on me, a student with disability accommodations.

This constitutes failure to provide individualized consideration, and passive institutional avoidance.



## Issue 1: SLDS Refused to Coordinate Flex Plan Implementation

According to OSU SLDS's own policy, the office is responsible for:

"consulting with you and your instructors on how to best implement accommodations."
(Source: slds.osu.edu)

By explicitly stating that it was "the student's responsibility to communicate with instructors," SLDS failed to provide basic coordination, leaving the student unsupported despite a valid, approved accommodation.

## Issue 2: SLDS Failed to Recognize the Nature of the Appeal

The response included the phrase:

"I'm not exactly sure what you mean by a formal appeal."

This statement shows a lack of understanding or refusal to engage with the legitimate escalation process—despite the fact that the accommodation was not being implemented and that the issue had already been raised at the college level. SLDS should have acknowledged the seriousness of the request and responded with clarity and follow-up support.

## Issue 3: Passive Language and Delay

Instead of providing steps or direct assistance, the email concluded: "I will update you when/if I hear more."

This kind of passive deferral reflects a broader pattern of inaction. Given that the student had already reported psychological distress and was seeking urgent support, the absence of any timeline, plan, or intervention constitutes a failure to provide meaningful assistance.

The university's refusal to offer any viable alternative following the failure of my SLDS-arranged final exam setting is not just negligent—it is a violation of federal disability law.

发件人: Speas, Jenny <speas_11@osu.edu>
日期: 星期二, 2025年4月15日 10:21
收件人: Liu, Estelle <liu_10412@buckeyemail.osu.edu>
主题: RE: Flex Plan Application – Attendance Notification

Hi Estelle,

I am not exactly sure what you mean by a formal appeal, but I have reached out to Dr. Luo by email. The expectation is for students to communicate with instructors regarding the use of their flex plans, however, so if there are specific concerns regarding your communication with him, that would be important to understand.

I will update you when/if I hear more.

Warmly,

Jenny

发件人: Office of Student Life Disability Services <OSU.SLDS@accessibleearning.com>
日期: 星期一, 2025年4月14日 07:31
收件人: Estelle Liu <liu_10412@osu.edu>
主题: [SLDS] Testing Request for MATH 4548.0020 - INTRO ANALYSIS 2 (LEC) (CRN: 20200) Denied

OFFICE OF STUDENT LIFE
DISABILITY SERVICES

Hello ,

Unfortunately, we are unable to proctor this MATH 4548.0020 - INTRO ANALYSIS 2 (LEC) (CRN: 20200) exam on the requested date.

If this notification is regarding a late scheduling request, additional information can be found by logging into AIM and selecting 'Alternative Testing' from the 'My Accommodations' menu on the lefthand side of the window.

Course: MATH 4548.0020 - INTRO ANALYSIS 2 (LEC) (CRN: 20200)

Date: Tuesday, April 29, 2025

## Category C: Avoidance Through Passive Language or Non-Action

"You may want to follow up with Jenny Speas at SLDS." "We are still waiting to hear from SLDS."

"This is not within our authority."

 Explanation:

These responses appear neutral but serve to delay or deny resolution. They redirect the student to parties without academic decision-making power and fail to acknowledge the college's role in implementing solutions when accommodation needs are clear.

发件人: Martin, Andrew <martin.1026@osu.edu>
日期: 星期一, 2025年4月14日 14:43
收件人: Fowler, Jim <fowler@math.osu.edu>, Liu, Estelle
<liu.10412@buckeyemail.osu.edu>
主题: RE: Urgent Request for Alternative Completion – MATH 4548

Thanks Jim, please let me know if there is anything I can do to assist.
Best
andrew

THE OHIO STATE UNIVERSITY

Andrew W. Martin
Associate Dean for Undergraduate Education
Professor of Sociology
114 University Hall, 230 North Oval Mall
Columbus, OH 43210
614-247-6641 Office
martin.1026@osu.edu

## Category D: Retaliatory and Dismissive Language

"You will not receive a response." - Vice Provost Jones [Following this statement, my email access was blocked; no further responses were received from SLDS, DUS, or the Dean's office.]

Explanation:
This statement, combined with the communication block, effectively terminated my access to the appeal process and removed any opportunity for resolution. It had direct psychological consequences and triggered complete administrative silence. This may constitute retaliatory behavior under ADA and Section 504 standards.

VP(Jones)Block email, and said: I just want to let

you know that this email (below) does not escalate your concern any higher than it has already been escalated. Dr. Andrew Martin will continue to serve as your point of contact. Please do not expect any response from the Office of the President or the Provost, as I always respond on their behalf for matters pertaining to undergraduates.



Retaliation occurs when an institution takes adverse action against an individual for asserting rights protected by Section 504 or the ADA."

Examples include:

- Blocking communication after a student files a complaint
- Discouraging a student from pursuing grievance or appeal
- Suggesting that escalation would harm the student's academic
-      standing
-      (Source: U.S. Department of Education, OCR)
- The Vice Provost initially blocked my university email address
- shortly after I began requesting accommodations and internal
- resolution. He later unblocked me, likely due to ongoing
- internal procedures. However, after the Ohio Civil Rights

Commission formally notified the university of its investigation into disability discrimination, the Vice Provost blocked me again — this time amidst active complaints and pending legal action.

This pattern of disengagement demonstrates clear retaliatory intent. The repeated blocking of communication by the official responsible for academic oversight has significantly impaired

my ability to complete my coursework, exhausted my internal
options, and contributed to irreparable educational and
psychological harm.

## Administrative Retaliation: Vice Provost's Repeated Email Blocking

After being notified of a pending investigation by the Ohio Civil
Rights Commission (OCRC), the same Vice Provost re-blocked my
university email account in early May 2025, shortly after I submitted
additional evidence and shared the matter with external oversight
bodies, including state officials and legal counsel. This second act
of suppression confirms a sustained pattern of administrative
retaliation intended to isolate, silence, and obstruct me from
pursuing my rights and completing my degree.

This is not a procedural oversight. It is a calculated denial of
access, carried out by a high-level official in direct response to
protected civil rights activity.



## Exhibit C: FERPA Violation – Unauthorized Email Disclosure

## Unauthorized Disclosure Summary – Exhibit: Email from Vivian Ferrigni

### Context:

On April 17, I received an unsolicited email from a student named Vivian Ferrigni, who stated:

"I got your email from Professor Luo. Attached are the notes I took during Wednesday's lecture."

This message indicates that Professor Luo shared my university email address and potentially information related to my accommodation status or academic difficulties with a third party—without my consent and without notification.

## Why this is a violation:

1. Violation of FERPA:
My email address, tied to my academic record, was shared with another student without my written consent. Under FERPA (Family Educational Rights and Privacy Act), this constitutes unauthorized disclosure of personally identifiable information.

2. Potential ADA Confidentiality Breach:
The context of the note-sharing implies the instructor disclosed that I was missing class or had academic challenges— likely due to my SLDS-registered disability and Flex Plan. This falls under protected disability-related information, and should not be shared without explicit permission.

3. Absence of Institutional Safeguards:
At no point was I informed by the instructor or SLDS that this disclosure would occur. No authorization was requested from me, and no follow-up or documentation was offered after the disclosure took place.
This reflects a systemic failure to protect privacy and uphold accommodation confidentiality.

## Legal and Policy Grounds:

- FERPA: 34 CFR § 99.30 prohibits schools from disclosing personally identifiable information from student records without consent.
- Section 504 / ADA: Requires institutions to protect confidential medical and accommodation-related information and to limit access only to personnel with a legitimate educational interest.

## Conclusion:

This incident represents a direct breach of student privacy and institutional confidentiality standards. The fact that the disclosure originated from an instructor—combined with the lack of transparency or response from the university—raises serious concerns about systemic handling of accommodation-related information.



## 1. Failure to Implement a Valid Accommodation

Definition:

The institution, faculty, or relevant administrative unit fails to
carry out accommodations that have already been approved through
official disability services, such as a Flex Plan or Accessibility
Letter.

Application in this case:

Despite having an SLDS-approved Flex Plan due to clinically documented psychological barriers, my proposed accommodations were
not implemented. No supervised alternative completion was arranged.

The instructor ignored the request, and the college refused to coordinate a viable option. This constitutes a direct failure to implement a valid and documented accommodation.

## 2. Denial of Access

Definition:

A student with a disability is denied meaningful access to an educational program or activity due to the institution's action—or inaction—in accommodating their needs.

Application in this case:

By failing to provide an accessible completion method for MATH 4548, the university effectively blocked my ability to complete the course in a psychologically safe and legally protected way. This denial occurred despite multiple attempts to communicate through proper channels and presents a textbook case of educational exclusion based on disability.

## 3. Violation of ADA / Section 504 Responsibilities

Definition:

Under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, public institutions are required to provide reasonable accommodations, avoid discriminatory barriers, and engage in the interactive process to ensure equal access for students with disabilities.

Application in this case:

At multiple levels—SLDS, faculty, department, and college—the university failed to uphold its federally mandated duties. The lack of implementation, refusal to engage, communication blocking, and subsequent retaliation (including email censorship and silence after escalation) represent clear violations of both ADA and Section 504 responsibilities.



Hello,
    A copy of your Midterm Exam 2 is attached.
    For your information, I use blackboard instead of lecture
slides to give lectures, which follows
the textbook and course syllabus closely

    Is your request for exam accommodation at SLDS
approved by SLDS? From my side I don't see
it has been scheduled (I guess the request perhaps was too
late for them to accommodate) and
I can't upload your final exam to the system. If this is the
case, then you will still need to take the
final exam at the usual classroom and time. Please double-
check it with SLDS, and let me know.

Sincerely,
Wenzhi Luo

## Final Summary (for closing OCR/grievance attachment):

These statements, repeated across different levels of administration,
reflect a consistent pattern of deflection, misrepresentation, and
procedural abandonment. Although I followed all internal protocols
and provided full documentation, I was redirected, denied access, or
ignored at every stage—ultimately resulting in a failure to
implement my accommodation and the loss of any safe, accessible
academic path forward.

April 8:Submitted formal appeal to VC of US(requesting alternative
completion due to psychological accommodation)

April 11 - 14:Flex Plan approved by SLDS and communicated to the
department



**April 17:** Appeal formally denied by Associate Dean Martin (on grounds that request was beyond SLDS scope)

From: Martin, Andrew <martin.1026@osu.edu>
Sent: Thursday, April 17, 2025 2:00:38 PM
To: Liu, Estelle <liu.10412@buckeyemail.osu.edu>; Jones, Norman <jones.2376@osu.edu>
Subject: RE: clarification

Hi Estelle
I wanted to follow up on this based on the conversation I've had with Jenny Speas in SLDS. The college cannot approve your request for an alternative academic completion plan (the one you outline below) because there is no SLDS authorization for such an alternative, and there is no other academic reason to provide the alternative. The solution offered by Math, for an alternative space for the final exam, was approved by SLDS. I will say that Jenny Speas in SLDS was hoping to get in contact with you today; I would recommend following up with her.

I have provided the information below to Math, but again, SLDS has not authorized this alternative, and therefore the College (and OAA) cannot require them to provide this arrangement.

Again, my suggestion would be to follow up with Jenny Speas in SLDS.
Best
Andrew Martin

THE OHIO STATE UNIVERSITY

Andrew W. Martin
Associate Dean for Undergraduate Education
Professor of Sociology
114 University Hall, 230 North Oval Mall

April 17, 2025: Vice Provost Jones sent a message stating, "you will not receive a response," and subsequently blocked my university email address from contacting his office. This action had the following direct and severe consequences:

• It effectively terminated my access to the academic appeal process.

> I was denied the ability to submit clarifying documentation, respond to the rejection, or follow up through appropriate internal channels. My right to due process was obstructed by an administrator with direct decision-making authority.

- It created a chilling effect across all relevant departments. After this message, the DUS, SLDS, and Dean's office ceased communication. My accommodation remained unimplemented, and no department offered a resolution. This indicates a coordinated or systemic withdrawal of engagement triggered by the Vice Provost's stance.
- It eliminated any pathway for resolution before graduation deadlines.
- By removing communication access during a critical decision
- period, I lost the opportunity to participate in accommodation-
- related discussions before SLDS deadlines and final exam
- scheduling.
- It caused severe psychological harm.
The abrupt silencing and institutional abandonment contributed directly to a panic attack and emergency room visit within days. The emotional impact of being told by a senior university official that "you will not receive a response" while accommodations were still pending was devastating.

This action by a senior administrator did not merely delay communication—it structurally ended the possibility of resolution within the university system, forcing me into external grievance and legal channels.



# 1. Administrative Retaliation: Vice Provost's Repeated Email Blocking

After being notified of a pending investigation by the Ohio Civil Rights Commission (OCRC), the same Vice Provost re-blocked my university email account in early May 2025, shortly after I submitted additional evidence and shared the matter with external oversight bodies, including state officials and legal counsel. This second act of suppression confirms a sustained pattern of administrative retaliation intended to isolate, silence, and obstruct me from pursuing my rights and completing my degree.

This is not a procedural oversight. It is a calculated denial of access, carried out by a high-level official in direct response to protected civil rights activity.



## Administrative Misrepresentation of SLDS Authority – Analysis of Dean Martin's Emails

OCR accommodation Guidline
https://www2.ed.gov/about/offices/list/ocr/docs/dcl-504faq-201109.html
From this website, there are four points which relates to me.

1. "A school must provide appropriate academic adjustments as necessary to ensure that it does not discriminate on the basis of disability."

2. "A recipient may not rely on another agency or individual to provide academic adjustments."

Under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA), information related to disability accommodations is considered protected information. Even if not explicitly governed by FERPA, such information falls under federal privacy protections.

Therefore, when an instructor discloses a student's accommodation status or forwards related materials to others without the student's explicit consent, it constitutes an unauthorized disclosure and may be a violation of the university's legal obligations under federal disability law.

4. "If a student believes that the school is failing to comply with Section 504, they may file a complaint with the Office for Civil Rights."

Below is a breakdown of three emails from Associate Dean Andrew Martin, outlining how they collectively demonstrate procedural avoidance, institutional deflection, and misrepresentation of SLDS's role.

# Email 1: Denial of Request Based on SLDS Non-Authorization

From: Martin, Andrew <martin_1026@osu.edu>
Sent: Thursday, April 17, 2025 2:00:38 PM
To: Liu, Estelle <liu_10412#buckeyemail.osu.edu>; Jones, Norman <jones.2376@osu.edu>
Subject: RE: clarification

Hi Estelle
I wanted to follow up on this based on the conversation I've had with Jenny Speas in SLDS. The college cannot approve your request for an alternative academic completion plan (the one you outline below) because there is no SLDS authorization for such an alternative, and there is no other academic reason to provide the alternative. The solution offered by Math, for an alternative space for the final exam, was approved by SLDS. I will say that Jenny Speas in SLDS was hoping to get in contact with you today; I would recommend following up with her.

I have provided the information below to Math, but again, SLDS has not authorized this alternative, and therefore the College (and OAA) cannot require them to provide this arrangement.

Again, my suggestion would be to follow up with Jenny Speas in SLDS.
Best
Andrew Martin

## Misleading Points:

- SLDS does not "authorize" academic formats.
  SLDS confirms the need for accommodations based on medical/psychological documentation. It does not determine whether a course can be completed through an exam, project, or alternative means. That decision lies with academic leadership.
- Claiming "no academic reason" invalidates the accommodation basis.

  The student's Flex Plan documents significant psychological barriers that prevent traditional faculty-proctored exams.

Dismissing that as lacking academic merit undermines ADA/504 protections.

- Shifting responsibility to SLDS case manager.
Directing the student back to SLDS staff avoids the College's duty to coordinate a completion format that aligns with the accommodation.

Email 2: Framing Accommodations as Solely SLDS-Defined

**From:** Martin, Andrew <martin.1026@osu.edu>
**Sent:** Thursday, April 17, 2025 3:36:59 PM
**To:** Liu, Estelle <liu.10412@buckeyemail.osu.edu>; Jones, Norman <jones.2376@osu.edu>
**Subject:** RE: clarification

Hi Estelle
Thank you for your response. SLDS determines appropriate accommodations based on your Flex Plan, not the college or the department. That is the purpose of the office. Once those accommodations are communicated to the unit (in this case the Math Department), it provides those accommodations (an alternative location for your final exam in this case). Again, the academic units and the college rely on SLDS to provide guidance, which we then follow. I have alerted the Math Department to your request, in the absence of any additional guidance from SLDS they would make the final decision regarding your request.

I'm glad you are in contact with Jenny Speas. I have asked her to contact me if there is any additional updates regarding the accommodation plan.
Best
Andrew Martin

THE OHIO STATE UNIVERSITY

1. Misleading Points:

    • Conflating SLDS authority with academic responsibility.
    SLDS defines the need for accommodations—not how a student should academically complete a course. That decision belongs to the academic unit, which must use discretion to implement an accessible alternative.

- Redefining the student's request as a minor logistics issue.
The original request was for an alternative to proctored, high-pressure final exams—not merely a different room. This reframing strips the request of its psychological basis.
- Implied procedural helplessness.
The email implies that no further action can be taken unless SLDS gives new "instructions," which is false. Academic units have the authority and obligation to adapt completion methods under ADA guidelines.

Email 3: Final Deflection and Abandonment

发件人: Martin, Andrew <martin.1026@osu.edu>
日期: 星期四, 2025年4月17日 16:09
收件人: Liu, Estelle <liu.10412@buckeyemail.osu.edu>, Jones,
Norman <jones.2376@osu.edu>
主题: RE: clarification

Hello Estelle
As I indicated earlier, the college (and department) will follow the
expectations of SLDS. Any requests beyond what is approved by SLDS
is entirely up to the department.
Best
Andrew

THE OHIO STATE UNIVERSITY

Andrew W. Martin
Associate Dean for Undergraduate Education

1. Misleading Points:
   - Internal contradiction.
     One sentence says the College follows SLDS. The next says
     the department decides independently. This contradiction
     ensures no one takes responsibility.
   - Complete abdication of coordinating role.
     The College is not just a messenger—it is responsible
     for implementing accommodations in a pedagogically
     reasonable way. Martin's message effectively leaves the
     student in a procedural void.
   - Passive denial masked as neutrality.
     Phrasing like "up to the department" sounds neutral but
     results in abandonment. It places the burden back on the
     student to negotiate with a department that already
     refused to engage.

2. SLDS Refuses to Recognize Disability-Related

   Need for Exam Accommodation Despite

   Hospitalization



3.    Warmly,

On May 7, 2025, SLDS denied my request for an alternative exam
format, claiming that my documentation "does not establish a
disability-related need" to modify the exam structure. In doing so,
SLDS acknowledged only one aspect of my diagnosis — social anxiety
— and limited its accommodation to offering me a private testing
room.

However, this fails to recognize the full scope of my conditions. My
medical record documents multiple, coexisting diagnoses, including:

- Major Depressive Disorder (MDD)
- Panic Disorder
- Obsessive-Compulsive Disorder (OCD)
- Generalized Anxiety Disorder

   These conditions are the primary reason that a standard, time-
   pressured exam — even in a private room — remains
   inaccessible and medically dangerous for me. My recent
   hospitalization confirms the severity of these impairments.

   By isolating one "easier" symptom and ignoring the others,
   SLDS engaged in selective recognition of disability, which is
   not only medically negligent, but also legally insufficient
   under the ADA and Section 504. The ADA requires individualized
   consideration and good- faith accommodation. This email
   reflects neither.



## Summary:

https://slds.osu.edu/registered-students/requesting-accommodations#adm (flex plan)

## SLDS Responsibilities (Quoted from OSU Website):

- Approving your accommodations and training you on the request process
- Providing services and accommodations in a timely manner
- Consulting with you and your instructors on how to best
  - implement accommodations
- Maintaining privacy of your documentation and disabilities

Institutional Failures in My Case:

| SLDS Duty (Per OSU Policy) | What Actually Happened |
|---|---|
| Timely Provision of Services | SLDS failed to ensure my Flex Plan was implemented in any of my courses, including the most urgent one (MATH 4548). There was no follow |
| Consultation with Instructors | SLDS did not actively help implement my accommodations with the Math Department. Instead, I was repeatedly told to negotiate |
| Confidentiality and Privacy Protection | My instructor shared accommodation-related information with a third party who then emailed me unsolicited |

Summary Statement:

This breakdown between stated policy and actual institutional behavior reflects a serious failure by SLDS to fulfill its own responsibilities. As a student acting in good faith, I followed the process, submitted my documentation, and received an approved Flex Plan. However, I was left to navigate critical issues alone, received no active support in implementation, and may have experienced a breach of confidentiality with no remediation.

These failures are not only inconsistent with university policy, but may also violate federal protections under **Section 504 of the Rehabilitation Act**, the **ADA**, and **FERPA**.

Why It Matters:

This language misrepresentation directly contributed to the failure to implement a legally valid accommodation, left the student without a viable academic path, and caused psychological harm and academic risk. It reflects a systemic misunderstanding—or deliberate avoidance—of responsibilities under ADA and Section 504.

**Institutional Failures Across Administrative Levels**

**1. Department of Undergraduate Studies (DUS)**

- Received the original appeal on April 8 requesting alternative academic completion due to psychological accommodation.
- Forwarded the request but failed to ensure any follow-up or resolution.
- Did not confirm whether the instructor had responded or whether the request had been substantively addressed.

**2. Associate Dean Andrew Martin**

- Denied the appeal based on a mischaracterization of the request, reducing it to a location issue rather than a completion format issue.
- Incorrectly claimed SLDS must authorize alternative completion formats, deflecting responsibility from the College.
- Directed the student back to SLDS despite knowing SLDS has no authority to approve academic formats.

**3. Vice Provost for Undergraduate Education (Jones)**

- Sent a message on April 17 stating "you will not receive a response," effectively shutting down all communication channels.
- Temporarily blocked the student's email access, denying access to due process.
- Did not initiate any academic review, resolution, or follow-up despite escalation and documentation.

**4. SLDS (Student Life Disability Services)**

- Approved the Flex Plan and acknowledged psychological accommodations, but did not follow up to ensure implementation.
- Failed to provide institutional support or interdepartmental coordination once the plan was ignored by academic units.
- Did not respond to later attempts to confirm implementation in other courses, despite ongoing medical distress.

**5. College Leadership (President's Office)**

- After receiving a formal grievance, took no action to initiate a review or assign responsibility.
- Chose silence and inaction in response to multiple follow-up emails.
- Failed to fulfill the College's oversight role in ensuring accommodation compliance and academic fairness.

This failure was not limited to a single department or administrator. Every level of the institutional process either redirected responsibility, misrepresented facts, or simply went silent. This pattern of procedural deflection and abandonment resulted in a complete failure to implement a legally valid accommodation under the ADA and Section 504.

Although the university technically offers internal grievance procedures, I followed all appropriate steps—submitting a formal appeal, receiving a denial—but no office responded or initiated resolution. Given the complete procedural breakdown and the time-sensitive impact on my graduation, I escalated to OCR only after exhausting internal options in good faith.

# Exhibit F

Comprehensive Timeline – MATH 4548 Case (Estelle Liu)

April 2: Contacted academic advisor after Midterm 2, expressing concern about psychological distress and the need to explore alternative completion options.

April 8: Submitted formal request to the Department of Undergraduate Studies (VC Jim Fowler) for an alternative academic completion plan due to documented psychological limitations.

April 9: Fowler confirmed the request was forwarded to the course instructor.

April 11–13: Instructor responded with logistical exam details but ignored the alternative completion request. No academic plan or psychological accommodation was addressed.

April 12: Submitted final exam accommodation request to SLDS, but scheduling deadline had passed.

April 13-14: SLDS Flex Plan approved and sent to instructor and Fowler. ( My Flex Plan was generated on April 11, 2025 Any prior version of the summary that mentioned only April 13 reflects the instructor-side acknowledgment, not the SLDS generation date.)

April 14: SLDS confirmed no exam could be scheduled and redirected coordination back to the instructor. Instructor did not propose any viable completion option.

April 14: Contacted Associate Dean Martin; received acknowledgment but no solution. Martin redirected the matter to Fowler.

April 14: Fowler confirmed that the instructor did not respond to the alternative completion request. Suggested Incomplete as an option, but offered no academic plan or assessment alternative.

April 14: Instructor sent Midterm 2 by email without context, feedback, or reference to accommodations. Reiterated that the final exam could not be uploaded to SLDS due to timing.

April 15: Formally contacted Dean Horn to request intervention due to lack of departmental resolution.

April 15 (evening): Submitted full formal academic appeal to Vice Provost, Academic Affairs, and supporting offices.

April 16: Contacted Student Advocacy and the Faculty Ombuds for guidance on how to proceed, citing unresolved accommodations, lack of response, and institutional deflection.

April 17 and onward: Received from Dr.Jone It is possible that Dr. Jones simply did not have the time to read my messages in full—or that my words were misunderstood, despite being repeated multiple times. However, given his background as a PhD in English, I believe that had he carefully read even a single full message from me, he would have clearly understood what I was asking for. Dr. Jones's professional biography highlights a strong commitment to supporting underrepresented communities and amplifying student voices. I trust that, had he been fully aware of the

extent of my situation, his response might have reflected those values. It is possible that the urgency and substance of my request were not fully recognized amid the volume of communications he receives. Either way, the result has been the same: no one has taken responsibility, and no viable solution has been offered.

April 17, 2025 – Submitted a formal grievance letter to President, citing months of unresolved SLDS accommodation failure and administrative deflection.

April 18, 2025 – Based on direct guidance from the Ohio Department of Higher Education (ODHE), escalated the case to the OSU Board of Trustees, with complete documentation of prior grievance attempts and systemic inaction.

April 19: Settlement proposal to OSU Board of Trustees （No answer）

April 22 I informed the school of the medical risks associated with taking the final in a regular classroom setting. However, instead of taking responsibility or offering alternatives, they redirected the matter to SLDS—despite the fact that SLDS had already approved my Flex Plan and stated that implementation was the department's responsibility.

May 2 the Ohio Civil Rights Commission (OCRC) informed me that they would notify the university the following week. They also stated that the investigation and resolution process may take up to one year.

May 4 ADA Coordinator Scott Lissner failed to provide a viable solution to the accommodation issue, despite prior documentation and repeated requests. This further demonstrated that the university had no intent to implement a legally compliant resolution through internal channels.

On May 5, I attended a final meeting with SLDS Access Specialist Jenny Holland. Following that meeting, I considered all internal remedies fully exhausted, as no viable or timely accommodation plan had been offered.

May 7, 2025

- Plaintiff received contact information for a legislative recommendation from the Ohio Governor's Office, indicating potential interest from a state legislator in the underlying disability rights issues raised by Plaintiff's case.
- On the same day, OSU's Student Life Disability Services (SLDS) formally rejected Plaintiff's request for an alternative assessment format, despite prior approval of accommodations and the availability of medically appropriate options.

May 8, 2025

- In response to SLDS's denial, Plaintiff submitted a formal request for case reevaluation to the Dean of SLDS, requesting a second review of her condition, needs, and the appropriateness of the proposed academic solutions.
- The Chair of the Department of Mathematics subsequently responded, clarifying Plaintiff's specific requests regarding alternative completion. The Chair acknowledged that:
  - Plaintiff has expressed a strong preference for an oral examination format due to her psychiatric condition;
  - Plaintiff is willing to complete up to ten oral assessment tasks, provided they are equivalent in academic rigor to the original final exam;
  - Plaintiff's primary concern is the safety, accessibility, and legitimacy of any alternative assessment process.

These developments further illustrate that Plaintiff has continued to pursue all available institutional remedies in good faith, while Defendant has persisted in offering solutions that are medically unsafe, procedurally delayed, or structurally inaccessible.

# Clarification Table – Estelle Liu Academic Appeal (MATH 4548)

This table outlines key mischaracterizations that may arise in the review of my academic appeal for MATH 4548, and provides factual clarifications regarding my actions, requests, and the institutional responses I have received. This summary is intended for administrative and academic leadership review, and is accompanied by full documentation.

| They may say | Clarification and Factual Response |
|---|---|
| She submitted too late | Although I submitted my SLDS exam accommodation request after the standard scheduling deadline, SLDS allows for temporary or last-minute accommodations in cases of emergent psychological need. I also formally submitted my alternative completion request on April 8, and my Flex Plan—generated on April 11, 2025, and confirmed in writing around April 13–14—explicitly supported alternative methods of completion due to documented |

| | psychological barriers. However, the instructor insisted on a traditional classroom exam setting, and no one responded directly to my alternative completion request. Despite SLDS's flexibility for emergency situations, the instructor did not provide any viable arrangement. As a result, I was left without any supported or implementable method to complete the course. |
|---|---|
| She won't take the final | I was unable to complete the final due to lack of a viable, accessible method, not by personal choice. While my SLDS request was submitted after the standard deadline due to a documented psychological crisis, SLDS confirmed that the case should be coordinated directly with the instructor. The instructor, however, refused to offer any safe or appropriate alternative format and insisted I take the exam in the regular classroom—an environment incompatible with my SLDS-approved limitations. This contradicts Flex Plan policy, which is designed to address sudden psychological distress. |
| We provided a testing location | The proposed location was monitored by the instructor and shared with peers from the same course. This setting does not meet the requirements of a psychologically safe environment as outlined in my SLDS accommodations. SLDS never confirmed this as an acceptable alternative. |
| We are not obligated to provide lecture notes, instructor uses black board | My SLDS accommodation explicitly states I should have access to lecture content. The instructor uses only the blackboard, refuses to upload any written materials, and has provided no substitute resources. This lack of access has materially impacted my ability to follow the course content. |

| She didn't respond to emails | I am a registered SLDS student with documented communication difficulty. My condition makes direct academic interaction difficult, particularly with culturally-aligned authority figures. As such, I consistently sought coordination through neutral intermediaries, including the DUS, Dean's Office, and SLDS. Non-response should not be interpreted as refusal to cooperate. |
|---|---|
| She requested Independent Study and it was rejected | I never insisted on a specific completion format. I have consistently expressed willingness to complete the course through any supervised, academically rigorous alternative, including written, oral, or project-based formats. The department retains discretion to determine the format—I only seek a feasible path forward. |
| She hasn't earned a passing grade / Her scores aren't high enough. | I have never requested a grade change or exemption. My appeal is not about altering outcomes—it is about requesting a **feasible academic path** to complete the course. To date, I have not been given such a path. **It is not possible to assess my academic performance fairly when no accessible structure has been provided.** Any reference to grades is premature and structurally unjustified.<br><br>If a student with a physical disability is not given access to the classroom, can we say they 'failed to attend |
| This is a grade dispute. | I have never requested a grade change. I am simply asking for an academically valid and supervised way to **complete this course**—one that meets the university's standards while staying within the psychological limits I am able to manage. |

| | |
|---|---|
| The instructor rejects to provide lecture note. VC(Fowler) has responded by arranging peer support for note access. | My SLDS accommodation explicitly requires access to lecture notes or instructional content. Relying on peer support is not a substitute for formal implementation by the course instructor. |

# Summary Clarification

I am not requesting a grade change, but **an alternative academic pathway to complete the course**—because I am unable to pass it through the standard structure due to documented psychological limitations. I am **willing to complete any additional work**—exam, project, or assignment—within the bounds of university policy. As a **graduating senior with a one-time-entry graduate program, confirmed travel plans, and complex departure logistics, further delay would cause irreversible consequences.**

Despite repeated efforts, **no one has ever directly responded to my actual request**. Instead, every office has reframed the issue, substituted unrelated solutions, or deflected responsibility to someone else. This consistent pattern of misdirection, avoidance, and conceptual substitution has not only delayed any resolution but has significantly worsened my psychological state.

I only seek a valid, supported way to finish what I started—something the university is fully capable of providing.

Moreover,  I Plaintiff has maintained an active registration with Student Life Disability Services (SLDS) at The Ohio State University since 2023, reflecting a long-standing, medically documented psychological condition.

My SLDS status was not initiated in response to any single academic event or individual course, but rather based on a verified history of clinical need.

Throughout the 2023–2024 academic year, the university had continuous access to my accommodation records and was fully aware of my psychological limitations. The university's failure to implement or coordinate appropriate academic alternatives—despite being on official notice for over a year—constitutes a clear breach of federally mandated accommodation responsibilities under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.