UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**YUHAN LIU,**

      **Plaintiff,**

  v.

**THE OHIO STATE UNIVERSITY,**

      **Defendant.**

:

:

**Case No. 2:25-cv-525**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## OPINION & ORDER

Proceeding *pro se*, Plaintiff Yuhan Liu brought this action against The Ohio State University ("OSU")[1], alleging disability discrimination for failure to accommodate and retaliation. This matter is before the Court on Ms. Liu's renewed Motion for Temporary Restraining Order. (ECF No. 27 ("TRO Mot.").) The Motion is fully briefed. Also pending is Ms. Liu's Motion to Expedite (ECF No. 36).

For the reasons below, Ms. Liu's TRO Motion is **DENIED** and her Motion to Expedite is **DENIED as moot**.

---

[1] OSU has made a limited appearance in this action for the purposes of addressing Ms. Liu's TRO Motion. (ECF No. 33.)

1

I.  BACKGROUND[2]

   A.  Ms. Liu's Accommodation Requests

Ms. Liu is an undergraduate OSU student on an F-1 visa[3] with psychiatric disabilities who expected to complete her degree in Spring 2025. (ECF No. 9 ("Compl."), PAGEID # 305; ECF No. 2-3 ("Liu Decl."), PAGEID # 38.) She was admitted to a mathematics graduate program at Georgetown University and must submit her final undergraduate transcript by July 1, 2025, to enroll. (Liu Decl., PAGEID # 38.) To complete her degree at OSU, she must pass MATH 4548: Introductory Analysis II, a course taught by Professor Wenzhi Luo. (Liu Decl., PAGEID # 38; ECF No. 40-27 ("Luo Aff.").)

   1.  **Ms. Liu was registered for accommodations at OSU.**

Students with disabilities at OSU may register through OSU's Student Life Disability Services ("SLDS") to be approved for accommodations. (ECF No. 40-1 ("Speas Aff.") ¶ 2, PAGEID # 438–39.) Ms. Liu registered with SLDS in autumn of

---

[2] Courts considering TRO Motions may rely on factual allegations in the complaint and uncontroverted affidavits as well as otherwise inadmissible evidence if it is appropriate given the character and objectives of the proceeding. *See Oruganti v. Noem*, No. 2:25-CV-00409-ALM-EPD, 2025 WL 1144560, at *3 (S.D. Ohio Apr. 18, 2025) (Marbley, J.). Ms. Liu has filed numerous documents in support of her factual claims, many of which contain screenshots of her email correspondence with OSU personnel and other parties. *See, e.g.*, ECF Nos. 2-3 through 2-13. This background is drawn from Ms. Liu's filings and the affidavits of OSU personnel and attached materials that OSU filed in support of its Response.

[3] "An F-1 visa provides foreign national students valid immigration status for the duration of a full course of study at an approved academic institution in the United States." *Oruganti*, 2025 WL 1144560, at *1 (citing U.S.C. S 1101(a)(15)(F)(i)). Since filing this action, Ms. Liu has returned to China. (ECF No. 15.)

2

2023 and received approval for attendance and deadline modifications, notetaking support, and reduced-distraction testing accommodations. (*Id.* ¶ 3, PAGEID # 439.)

### 2. Ms. Liu missed the deadline to take her MATH 4548 final with accommodations.

Ms. Liu did not activate her accommodations in MATH 4548 at the beginning of the semester because she hoped to complete the course without accommodations. (Liu Decl., PAGEID # 34.) Then, on April 2, Ms. Liu told her academic advisor that her performance in MATH 4548 "has not gone well" and that she was concerned that she would not meet the minimum grade requirement to pass the class. (ECF No. 2-13, PAGEID # 160.) On April 8, she asked Associate Professor & Vice Chair for Undergraduate Studies Dr. James Fowler if she could complete MATH 4548 over the summer; she told him that she had not consistently attended class and was concerned that she could not pass the course "through the standard final exam route[.]" (ECF No. 40-17 ("Fowler Aff.") ¶ 2, PAGEID # 530.) He responded that MATH 4548 was not offered over the summer but that he could reach out to Professor Luo on her behalf and encouraged her to contact her advisor to discuss possible accommodations. (*Id.* ¶ 3, PAGEID # 531.)

Under OSU's policies, students must submit requests for final exam accommodations to SLDS 30 days before finals week—the deadline for the Spring 2025 semester was March 26. (Speas Aff. ¶ 4, PAGEID # 439–40.) On April 11, Ms. Luo requested exam accommodations in MATH 4548, seeking a reduced-distraction setting for the final exam. (*Id.* ¶ 6, PAGEID # 440.) A few days later, she asked to activate her Flex Plan (i.e., attendance and deadline modifications) and for lecture

3

slides. (*Id.* ¶¶ 6–7, PAGEID # 440–441.) SLDS approved her requests despite their lateness, but SLDS Access Specialist Jenny Speas advised Ms. Liu that she needed to contact her instructor regarding available flexibility. (*Id.*) She also offered to meet with Ms. Liu to problem-solve her request for notetaking accommodations because Professor Luo did not use slides. (*Id.* ¶ 6, PAGEID # 440.)

### 3. Despite missing the deadline, OSU offered Ms. Liu an arrangement to take the MATH 4548 final with accommodations.

On April 15, Dr. Fowler explained to Ms. Liu that, due to her late request, SLDS could not administer the MATH 4548 final exam but that he would "coordinate a suitable room for you to take the exam in a small group setting proctored by me." (Fowler Aff. ¶ 5, PAGEID # 532–33; ECF No. 40-21.) He also addressed her request to receive lecture slides and noted that, although Professor Luo did not use Powerpoint, SLDS had previously arranged for classmates to share notes in situations where a professor did not use prepared slides. (Fowler Aff. ¶ 5, PAGEID # 532–33; ECF No. 40-21.)

Ms. Liu told Dr. Fowler that she could not take the exam in the Math Tower, so he arranged a different room in a different building. (Fowler Aff. ¶ 5, PAGEID # 532–33.) However, Ms. Liu declined that as well, stating the "core issue is not proximity to the Math Tower – it is the structure of the exam itself and the presence of the course instructor as the proctor, both of which pose medically documented risks and are incompatible with my SLDS approved flex plan." (*Id.*) Dr. Fowler responded that her final exam "won't involve other students. It'll just be you, myself

4

serving as the proctor and a faculty observer. To maintain fairness for all students we must follow the accommodations SLDS approves. Your request for additional accommodations beyond what SLDS approved has been denied. You may take the final exam in the alternative location without the instructor as the proctor, but the format of the exam cannot be changed." (*Id.* ¶ 6, PAGEID # 533.)

Throughout this period, Ms. Liu also contacted other OSU personnel, including OSU's Associate Dean for Undergraduate Education (Andrew Martin) and Vice Provost (Norman Jones). On April 22, Dean Martin advised Ms. Liu that SLDS could potentially recommend alternative formats for an exam, but that they would need additional information from her to make that determination. (Fowler Aff. ¶ 7, PAGEID # 533.)

### 4. Ms. Liu requested to take an "Incomplete" grade in MATH 4548.

On April 24, Ms. Liu requested to be given an "incomplete" in both MATH 4548 and Introduction to Mathematical Statistics, STAT 4202, which gave her more time to complete these courses. (Speas Aff. ¶ 8, PAGEID # 442; ECF No. 40-13 ("Lissner Aff.") ¶ 10, PAGEID # 519.) As to MATH 4548, she requested that she be allowed to complete an alternative final task (such as a written problem set, take-home exam, or oral explanation) to be independently evaluated for her final grade. (ECF No. 40-6, PAGEID # 482.) On April 28, Professor Luo told her he would assign an Incomplete for her grade in MATH 4548. (ECF No. 2-13, PAGEID # 156.) Ms. Liu says the deadline for resolving her Incomplete in MATH 4548 is June 15, 2025. (Liu Decl., PAGEID # 38.)

5

As to her statistics course, Ms. Liu was also assigned an Incomplete; in mid-May, she successfully completed two quizzes and the final examination via remote proctoring. (ECF No. 40-16 ("Kerr Aff.") ¶¶ 2–3, PAGEID # 527–28.)

### 5. OSU offered Ms. Liu options to take a make-up final exam with accommodations.

Ms. Liu experienced a "medical emergency" on April 15 and was later hospitalized from April 24 to April 30. (Liu Decl., PAGEID # 38; ECF No. 2-4.) She submitted documentation of these events to SLDS and, on May 6, SLDS told her that while her documentation "does substantiate the dates of your treatment in April 2025, it does not establish a disability-related need for an alternative to the exam format." (ECF No. 40-9.) However, SLDS could offer her two options to take her MATH 4548 final: (1) in a private room at SLDS's testing center; or (2) proctored remotely by SLDS staff in a virtual setting. (*Id.*)

She requested an ADA grievance review of SLDS's recommended options. (Lissner Aff. ¶ 11, PAGEID # 519.) On May 13, ADA Coordinator and Section 504 Compliance Officer Scott Lissner concluded that she should be provided extended testing time and the ability to take breaks during the exam, in addition to the accommodations already offered. (Lissner Aff. ¶ 11, PAGEID # 519.) He also determined that the deadline for resolving her Incomplete in MATH 4548 should be extended to make the full six weeks available to her. (*See* ECF No. 40-15.) Regarding her request for lecture slides, he found that she had not reached out to SLDS to facilitate a different accommodation in compliance with OSU's policy for situations when a professor does not use slides. (*Id.*)

6

### 6. OSU canceled Ms. Liu's Spring 2025 graduation application.

On April 28, Ms. Liu notified OSU's Office of International Affairs ("OIA") that she had received Incompletes in multiple courses and asked if she could cancel her Spring graduation application and apply for Summer graduation and, if so, whether her student visa program end date would be adjusted accordingly. (ECF No. 24-2, PAGEID # 352.) The OIA advised her to cancel her Spring graduation application if she did not complete the courses on time and confirmed that changing her last semester to Summer 2025 would update her program end date. (*Id.*, PAGEID # 353.)

On May 20, OSU's Graduation Services told Ms. Liu that her Spring 2025 graduation application had been canceled. (ECF No. 23-2.) Despite the cancellation, she received confirmation on May 22 that her "SEVIS status"[4] is currently active. (ECF No. 25.)

## II. LEGAL STANDARD

Courts consider four factors in determining whether to issue a temporary restraining order (TRO):

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable harm; (3) whether the TRO would substantially harm third parties; and (4) whether the TRO would serve the public interest. *York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 304 (6th Cir. 2019).

---

[4] "SEVIS is an electronic system maintained by DHS that tracks and monitors schools, Student Exchange Visitor Programs ("SEVP"), and F-1 students who have come to the United States to participate in the education system here. F-1 visa holders have no access to or visibility into the system. The SEVIS system shows whether a student … is in compliance with her F-1 status." *Oruganti v. Noem*, 2025 WL 1144560, at *1.

7

> These four factors are not prerequisites, but rather they are to be balanced. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). Dispositive weight should not necessarily be given to one factor over the others. *York*, 787 F. App'x at 304–05.

*Refunjol v. Adducci*, 2:20-cv-2099, 2020 WL 1983077, at *3 (S.D. Ohio Apr. 27, 2020) (Morrison, J.).

### III. ANALYSIS

Ms. Liu's renewed TRO asserts that she "has already been removed from Spring graduation" and that "[d]elays [in her graduation] will result in the loss of F-1 visa status, deferral or revocation of graduate admission at Georgetown University, and permanent interruption of her academic and professional trajectory." (TRO Mot., ECF No. 363.) She seeks a Court order requiring OSU to, among other things, "[p]rovide an alternative academic completion method for MATH 4548[.]" (*Id.*)

In its Response opposing her TRO Motion, OSU states that it remains willing to let her take the exam and possibly graduate in time to attend Georgetown and "has offered her the ability to take the test with remote proctoring, alone, with 150% the normal time and to do so from China." (ECF No. 40 ("OSU Resp."), PAGEID # 435–36.)

### A. Likelihood of Success on the Merits

#### 1. Failure to Accommodate

Ms. Liu brings failure to accommodate claims under Title II of the ADA (Count I) and § 504 Rehabilitation Act (Count II). (Compl., PAGEID # 310.) "[B]ecause the purpose, scope, and governing standards of the 'acts are largely the

8

same, cases construing one statute are instructive in construing the other[,]'" and the Court therefore will analyze her failure to accommodate claims together. *Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000) (quoting *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir.1997)).

To make out a prima facie case under both acts, Ms. Liu must show that: "'(1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability.'" *Gati v. W. Kentucky Univ.*, 762 F. App'x 246, 250 (6th Cir. 2019) (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)). A person is "otherwise qualified" if she can meet the program's necessary requirements with reasonable accommodation. *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). A plaintiff bears the burden of demonstrating that she is qualified by "proposing an accommodation and proving that it is reasonable, including establishing that he can meet a program's necessary requirements with that accommodation." *Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 353 (6th Cir. 2015) (internal citations omitted) (citing *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010); *Kaltenberger*, 162 F.3d at 435).

A person who is disabled under the ADA is not entitled to "the *best* accommodations or [her] *preferred* accommodations[,]" but only to "reasonable accommodations." *Knox Cnty., Tenn. v. M.Q.*, 62 F.4th 978, 1001 (6th Cir. 2023) (citing *Alexander v. Choate*, 469 U.S. 287, 300 (1985)). "'Though discrimination statutes guarantee disabled students 'equality of opportunity' and 'full participation'

9

in society, they do not require an educational institution to lower or substantially modify its standards to do so[.]'" *Gati*, 762 F. App'x at 250 (internal citations omitted) (citing 42 U.S.C. § 12101(a)(7)); *Se. Community Coll. v. Davis*, 442 U.S. 397, 413 (1979)). The law mandates only reasonable—not fundamental or substantial—adjustments. *Id.* (citing *Alexander*, 469 U.S. at 300). In evaluating the reasonableness of an accommodation, courts have acknowledged that the "'federal judiciary is ill equipped to evaluate the proper emphasis and content of a school's curriculum' and should afford a university's judgment and discretion great respect." *Id.* (quoting *Kaltenberger*, 162 F.3d at 436.)

Here, Ms. Liu has not demonstrated that she is likely to succeed on the merits of her failure to accommodate claims. She was approved for notetaking accommodations in MATH 4548, but she did not work with SLDS to determine an alternative to her request for lecture slides when Professor Luo informed her that he did not use slides. She was also approved for exam accommodations in the form of a distraction reduced testing space in a small group setting. Despite missing the deadline to schedule her final exam with accommodations, OSU offered her an arrangement to take the final exam in a separate room with only Dr. Fowler and an observer. Ms. Liu rejected this accommodation because she wanted an alternative exam format. But OSU explained to her that her medical documentation did not support her request. Then, after granting her an Incomplete in the course, OSU offered her the option to take a make-up final exam in a private room or remotely. She continued to reject OSU's offered accommodations because they were not the

10

accommodations she wanted. But Ms. Liu is not entitled to her preferred accommodations, only reasonable ones.

Given that OSU's decision to reject her request is entitled to deference and that the law does not require accommodations that substantially alter academic standards, Ms. Liu is unlikely to succeed on the merits.

### 2. Retaliation

Ms. Liu brings retaliation claims under the ADA and Rehabilitation Act. Courts also construe ADA and Rehabilitation Act claims together for purposes of the retaliation analysis. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696–97 (6th Cir. 2013). She alleges that OSU retaliated against her by "by ignoring, deflecting, and obstructing relief, and by terminating communication." (Compl., PAGEID # 310–11.) But the correspondence between Ms. Liu and OSU personnel demonstrates that OSU did not ignore, deflect, or obstruct her requests. As to her allegations of terminating communication, she says that VP Jones told her that she "would receive no further response because [she] had escalated the matter to the university president." (Liu Decl., PAGEID # 34.) A review of his email, however, reveals that he merely told her that she should not expect to receive responses directly from OSU's Office of the President or the Provost because he responds on their behalf. (ECF No. 2-7, PAGEID # 74.)

Accordingly, she has not shown that her retaliation claims are likely to succeed on the merits.

11

### B. Irreparable Harm

To establish irreparable harm, Ms. Liu must show that she will suffer "actual and imminent" harm, "rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). "[T]his Court has concluded that lost educational opportunities and the inability to pursue a vocation are sufficient to establish irreparable injury[.]" *A.F. v. Ass'n of Am. Med. Colleges*, 678 F. Supp. 3d 952, 968 (S.D. Ohio 2023) (Sargus, J.) (citing *Berger v. Nat'l Bd. of Med. Examiners*, No. 1:19-cv-99, 2019 WL 4040576, at *26–27 (S.D. Ohio Aug. 27, 2019) (Litkovitz, M.J.); *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012)).

Ms. Liu has identified a number of potential consequences that would flow from her not being permitted to complete MATH 4548 with her requested accommodations, including the financial and psychological harm of another semester at OSU, the loss of her F-1 visa status,[5] and the deferral or revocation of her Georgetown admission. (*See* TRO Mot.; ECF No. 28-1 ("Liu Supp. Decl.").) But none of these harms will occur if she completes the MATH 4548 exam with OSU's offered accommodations and passes the course. And Ms. Liu has not provided any evidence suggesting that OSU's offered accommodations are so inadequate that she cannot pass MATH 4548 without them. Indeed, Ms. Liu concedes she passed the

---

[5] This Court has found that the loss of a student's "F-1 status places her education, research, financial stability, and career trajectories at imminent risk of irreparable harm, and puts her at risk of detention or deportation." *Oruganti*, 2025 WL 1144560, at *5. In *Oruganti*, the Court found irreparable harm where a student's record and F-1 status in the SEVIS database had been terminated. *Id.* at *1. Here, however, Ms. Liu's SEVIS status is active.

12

final exam in her statistics course via remote proctoring without requiring any changes to the exam format.[6] (ECF No. 45-1 ("Liu Reply"), PAGEID # 561.) Further, due to OSU's extension of the deadline to resolve her Incomplete, the imminence of these harms have decreased.

Moreover, even if the Court were to agree that Ms. Liu would suffer irreparable harm in the absence of injunctive relief, injunctive relief is not warranted on this basis alone because the Court has found that she has not shown a strong likelihood of success on the merits of her claims. *A.F.*, 678 F. Supp. 3d at 969.

### C. Harm to Others and Public Interest

The remaining two TRO factors do not weigh in Ms. Liu's favor. She asserts that "[r]einstating a single student's course completion opportunity poses no material harm to OSU[.]" (TRO Mot., PAGEID # 364.) But as discussed above, the Court doubts that her requested accommodations are reasonable—given this doubt, the award of potentially unfair accommodations would harm not only other her classmates, but it would also compromise OSU's interest in ensuring the fair administration of exams. *See A.F.*, 678 F. Supp. 3d at 969.

And while the public has an interest in "ensuring that covered entities provide adequate accommodations to those with disabilities[,]" it "also has an interest in the faithful administration of the ADA." *Id.* at 969–70. Because Ms. Liu has failed to demonstrate that she is likely to succeed in showing that OSU

---

[6] She argues that she could not take the final in MATH 4548 because it was the "only course where the exam format itself was a panic trigger"—but she does not explain how the MATH 4548 exam format differed from her exams in other courses. (Liu Reply, PAGEID # 563.)

13

wrongfully denied her accommodations, the Court cannot find that granting the requested relief would serve the public interest.

IV. **CONCLUSION**

For the reasons set forth above, Ms. Liu's TRO Motion (ECF No. 27) is **DENIED** and her Motion to Expedite (ECF No. 36) is **DENIED as moot**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**